lyn, adjudged void, because in making the assessment the assessors assessed the two lots as one lot, by linking them together under one valuation.    Assuming that an assessment made in this manner would have been fatal to the tax in the absence of curative legislation, we think that the objection has been rendered unavailing by the effect of chapter 1015 of the Laws of 1895, which provided that no tax assessment or water rate theretofore levied in reference to any property situated within the city of Brooklyn should be held or declared to be invalid or ineffectual by reason of the fact that two or more lots shown on the ward map had been valued or assessed as one parcel, or by reason of the fact that such tax assessment or water rate had been levied upon two or more such lots tied together as one parcel. As it was within the constitutional power of the legislature to enact a tax law providing that two or more lots belonging to common owners might be assessed together, so it was equally within the power of the legislature to confirm and ratify any assessment which had been so made without express statutory authority.    We suppose the legislature may confirm any proceeding of the assessors under a tax law which the legislature could have authorized in advance.    The authority of the legislature in this respect was so fully considered and discussed by Mr. Justice Cullen in the case of Hagner v. Hall, 10 App. Div. 581, 42 N. Y. Supp. 63, that we deem it unnecessary to say anything further in sustaining the judgment of the court below, except to refer to that opinion.

Judgment affirmed, with costs.

---

STILL v. NASSAU ELECTRIC R. CO.

(Supreme Court, Appellate Division, Second Department.   July 11, 1898.)

1. APPEAL—VERDICT AGAINST EVIDENCE.
    A verdict is not to be set aside as against the evidence merely because there is an absence of proof to corroborate the personal statements of the prevailing party, where his failure to furnish such corroboration may be and is readily accounted for.

2. CARRIERS—INJURY TO PASSENGER—CONTRIBUTORY NEGLIGENCE.
    If a passenger on a crowded surface car occupies a seat provided for the purpose, on the front platform, and yields it to another passenger, the fact that thereafter he continues standing on the platform is not of itself negligence, unless he knows or ought to know that he is in a position of danger from which he could escape by going inside the car, and has an opportunity to do so.

3. DAMAGES—EXCESSIVE VERDICT.
    In an action to recover damages for an injury, due to defendant's alleged negligence, resulting in a sprain or partial dislocation of the plaintiff's left wrist joint, it appeared that he was a waiter, on small daily wages, and the permanency of the injury, which had largely disappeared, and the seriousness of pains in his back, to which he testified, were not very clearly established. *Held*, that a verdict for $1,100 was excessive.

Appeal from trial term, Kings county.

Action by Sidney A. Still against the Nassau Electric Railroad Company.   From a judgment in favor of plaintiff, rendered on a verdict for $1,100, and from an order denying a new trial, defendant appeals.   Affirmed on conditions.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Henry Yonge, for appellant.

James D. Bell, for respondent.

WILLARD BARTLETT, J. On June 23, 1896, one of the open trolley cars on New Utrecht avenue, in the city of Brooklyn, ran into an express wagon which was crossing the defendant's line at the intersection of Seventy-Ninth street. According to the plaintiff's testimony, he was a passenger on the front part of the car, and was standing at the time of the collision, having risen to give place to a lady on the seat immediately behind the motorman. The shock, he says, threw him off towards the side of the street; and, when he recovered consciousness, he found himself, with another injured person, in a neighboring grass lot, where he was revived with stimulants, so that in 30 or 40 minutes he was able to go home. The extent of his injuries will presently be considered.

In contending that the verdict is against the weight of evidence, the learned counsel for the appellant emphasizes the fact that none of the witnesses who testified upon the trial remembered having seen the plaintiff, either before or after the collision, on the car, or in the grass lot, or being conveyed thither. "If the plaintiff were really thrown from the car, and became insensible," he says, "and was carried to the grass, and remained there in a fainting condition for forty minutes, it is almost incredible that none of the witnesses saw him fall, or helped carry him, or saw him carried or lying on the grass. The conclusion is irresistible that the plaintiff did not fall, or, if he did, he suffered no injury, else some one would have recalled it." The answer to this argument is that upon a car crowded as this was, so that passengers were standing in the cross aisles and upon the steps, the persons who saw the plaintiff fall might well be lost to him as witnesses the moment the car moved on, and that the plaintiff, in a fainting and dazed condition from the shock he had received, would not be likely to take the names of the strangers who assisted him after he was hurt. Furthermore, it appears that another passenger was more severely injured, and his case would naturally withdraw attention from that of the plaintiff. "I did not notice this man," says one of the witnesses, who was on the car, referring to the plaintiff. "I heard that some one had been hurt on that side of the car, but my attention was entirely attracted to the other man, who was quite badly hurt." The jury could believe the plaintiff if they chose, even though there was no direct corroborative evidence. It was certain that the collision had occurred at the time and place alleged by him, and that the proof warranted a view of the circumstances which would impute negligence to the defendant's servants in their management and operation of the car. A verdict is not to be set aside as against the evidence merely because there is an absence of proof to corroborate the personal statements of the prevailing party, when the failure to furnish such corroboration may be and is readily accounted for.

Exception was taken by the defendant's counsel to that part of the charge in which the learned trial judge instructed the jury as follows:

"It is not negligence per se for a man to stand on the platform of a car, and I charge you now that the plaintiff, standing on the front platform of that car, was not negligent, unless the car was so crowded as to make it dangerous, and unless you find there was room on the inside of the car, and which fact he knew, and he could reach without inconvenience to himself."

In giving this instruction the court evidently had in mind the doctrine of Nolan v. Railroad Co., 87 N. Y. 63, that it is not of itself negligence for a passenger, who has not been forbidden to do so, to ride on the front platform of a street car. In the present case the reason for absolving a passenger from negligence for riding in such a place is far stronger than it was in the Nolan Case. The so-called "front platform" of the open trolley car upon which the plaintiff rode was provided with a seat for passengers, so there could be no imputation of negligence in occupying that seat. The plaintiff arose therefrom to enable a lady to sit down. Up to this time he certainly had not been negligent. Nor was it negligent for him to remain standing there unless he knew or ought to have known that he was in a position of danger, from which he could escape by going inside the car, and had an opportunity to do so. This is substantially what the learned judge told the jury. The phrase "without inconvenience to himself" did not state the condition quite accurately, but it could not have had a misleading effect in view of the evidence that in the crowded state of the car, if the plaintiff is to be believed, it was impossible for him to get inside. "The car was packed," he says, "even to the steps."

The only other question raised on this appeal relates to the amount of the recovery. I think that the verdict of $1,100 was clearly excessive. Although the plaintiff was otherwise bruised, the most serious injury which he sustained was a sprain or partial dislocation of the left wrist joint. He was a waiter at the time of the accident, receiving a dollar a day, "and making on the outside from six to eight dollars a day," but in what way does not appear. It was seven weeks after the collision before he earned anything, when he went to work as a waiter again, as he says, "slinging beer on Coney Island," at which pursuit he made about $1.50 a day during the remainder of the season of 1896. He was treated by two physicians, but called only one of them as a witness, who testified that he saw the plaintiff but once, and merely prescribed liniment for him, and bromide of potassium to allay the nervous irritation of the patient. The plaintiff is now engaged in the oyster business, and complains that the injury to his wrist prevents him from opening oysters as readily as he could formerly open them. There is no proof, however, as to the extent to which his earning capacity has been reduced by the injury, if indeed it has been diminished at all, or as to how far the physical usefulness of the wrist has been lessened, though there is medical opinion evidence in the case to the effect that it cannot be restored to its normal condition so that it will be as well as it was before the accident. As against this is the declaration of the medical expert called by the defendant on the trial, who declared that the plaintiff's wrist was a perfect wrist, as far as he could see. So far as permanent incapacity affecting the plaintiff's earning power is concerned, the verdict has very little to rest upon; but the item of bodily suffering

cannot be overlooked. The plaintiff asserted that his back and chest were hurt, and that he had never recovered from his injuries in these regions, so as to be free from pain, since the time of the accident. The character of the pain was not described, however, nor did it appear that the plaintiff had consulted any physician with reference to it since immediately after the collision. Under such circumstances, and in the absence of express evidence on the subject, it can hardly be inferred that the pain was of great or increasing severity or likely to be permanent. Without discussing any further the proof on this branch of the case, a careful consideration of all of it leads to the conclusion that the damages awarded were excessive, and require the granting of a new trial, unless the plaintiff prefers to stipulate to reduce the recovery to $500.

Judgment and order reversed, and new trial granted, costs to abide the event, unless within 20 days plaintiff stipulates to reduce recovery of damages to the sum of $500, and extra allowance proportionately, in which case the judgment as modified is unanimously affirmed, without costs of this appeal to either party. All concur.